## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BH1<br>3322 West End Avenue, Suite 720<br>Nashville, TN 37203 | : |
| | : |
| BAPTIST HOSPITAL<br>2000 Church Street<br>Nashville, TN 37236 | :  Case No: |
| | : |
| BLOUNT MEMORIAL HOSPITAL<br>907 East Lamar Alexander Parkway<br>Maryville, TN 37804 | : |
| | : |
| COOKEVILLE REGIONAL MEDICAL<br>CENTER<br>142 W. 5th Street<br>Cookeville, TN 38501 | : |
| | : |
| ERLANGER HEALTH SYSTEM<br>975 East Third Street<br>Chattanooga, TN 37403 | : |
| | : |
| FORT SANDERS LOUDON MEDICAL<br>CENTER<br>1125 Grove Street<br>Loudon, TN 37774 | : |
| | : |
| FORT SANDERS PARKWEST MEDICAL<br>CENTER<br>9352 Park West Boulevard<br>Knoxville, TN 37923 | : |
| | : |
| FORT SANDERS REGIONAL MEDICAL<br>CENTER<br>1901 Clinch Avenue SW<br>Knoxville, TN 37916 | : |
| | : |
| GATEWAY HEALTH SYSTEM<br>1771 Madison Street<br>Clarksville, TN 37043 | : |
| | : |
| HENRY COUNTY MEDICAL CENTER<br>301 Tyson Avenue<br>Paris, TN 38242 | : |

JACKSON-MADISON COUNTY          :
GENERAL HOSPITAL                :
708 West Forest Avenue          :
Jackson, TN 38310               :
                                :
JOHNSON CITY HOSPITAL MEDICAL   :
CENTER                          :
400 North State of Franklin Road :
Johnson City, TN 37604          :
                                :
LAUGHLIN MEMORIAL HOSPITAL      :
1420 Tusculum Boulevard         :
Greeneville, TN 37745           :
                                :
METHODIST MEDICAL CENTER OF     :
OAK RIDGE                       :
990 Oak Ridge Turnpike          :
Oak Ridge, TN 37831             :
                                :
MIDDLE TENNESSEE MEDICAL        :
CENTER                          :
400 N. Highland Avenue          :
Murfreesboro, TN 37133          :
                                :
MORRISTOWN – HAMBLEM            :
HEALTHCARE SYSTEM               :
908 West Fourth North Street    :
Morristown, TN  37814           :
                                :
REGIONAL MEDICAL CENTER AT      :
MEMPHIS                         :
877 Jefferson Avenue            :
Memphis, TN  38103              :
                                :
ST. MARY'S HEALTH SYSTEM        :
900 E. Oak Hill Avenue          :
Knoxville, TN 37917             :
                                :
ST. THOMAS HOSPITAL             :
4220 Harding Road               :
Nashville, TN, 37205            :
                                :
UNIVERSITY OF TENNESSEE MEDICAL :
CENTER                          :
1924 Alcoa Highway              :
Knoxville, TN 37920             :

VANDERBILT UNIVERSITY MEDICAL    :
CENTER                           :
21st Avenue South & Garland Street  :
Nashville, TN 37232              :
                                 :
WELLMONT BRISTOL  REGIONAL       :
MEDICAL CENTER                   :
1 Medical Park Boulevard         :
Bristol, TN 37620                :
                                 :
WELLMONT HOLSTON VALLEY          :
MEDICAL CENTER                   :
130 Ravine Road                  :
Kingsport, TN 37662              :
                                 :
WILLIAMSON MEDICAL CENTER        :
2021 Carothers Road              :
Franklin, Tennessee 37067        :
                                 :
          Plaintiffs,            :
                                 :
              v.                 :
                                 :
MICHAEL O. LEAVITT, Secretary of the  :
United States Department of Health and  :
Human Services                   :
200 Independence Ave., S.W.      :
Washington, D.C. 20201           :
                                 :
Defendant.                       :
                                 :
_____  :

## PLAINTIFFS' COMPLAINT

The above-named Plaintiffs ("the Hospitals"), by and through their undersigned

counsel, state the following by way of Complaint against Michael O. Leavitt, Secretary of

the Department of Health and Human Services ("the Secretary"):

## NATURE OF THE CASE

1.      This action arises from the Secretary's failure to reopen certain of the Hospitals' Medicare cost reports, recalculate their Medicare disproportionate share hospital ("DSH") adjustment, and to make such payments as called for by the recalculation, either directly or through the Secretary's intermediary. These payments are due and owing under the Medicare statute. The Hospitals bring this action for mandamus to compel the Secretary to perform his non-discretionary duty to reopen the Hospitals' cost reports in order to recalculate and issue those payments.

## JURISDICTION

2.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq. ("the Medicare statute"). The United States District Court for the District of Columbia has jurisdiction in this matter pursuant to 28 U.S.C. §1361 because (i) the hospital has exhausted all available remedies related to this issue within the meaning of the statute (by either filing the appropriate requests for reopening and/or appeals or because such remedies are either unavailable as a matter of law or futile) and (ii) the Defendant has a clear, non-discretionary duty to act in this case.

## VENUE

3.      Venue is proper in this district court, pursuant to 28 U.S.C. §1391 and 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(f).

## THE PARTIES

4.      Plaintiff, BH1, located at 3322 West End Avenue, Suite 720, Nashville, Tennessee, is a corporation that owned and operated Baptist Hospital in Nashville,

Tennessee, until approximately December 31, 2001. BH1 was formerly known as Baptist Hospital System, Inc. and Baptist Hospital, Inc. BH1 has a full and perfected legal interest to the increased DSH payments sought through this complaint for the years referenced in this complaint with respect to BH1 and/or Baptist Hospital.

5.      Plaintiff, Baptist Hospital, is an acute care hospital and licensed Medicare provider located at 2000 Church Street, Nashville, Tennessee, and has been assigned Medicare provider number 44-0133. Baptist Hospital furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program. For cost report periods 1994 through 2000, Baptist Hospital was owned and operated by BH1.

6.      Plaintiff, Blount Memorial Hospital, is an acute care hospital and licensed Medicare provider located at 907 East Lamar Alexander Parkway, Maryville, Tennessee, and has been assigned Medicare provider number 44-0011. Blount Memorial Hospital furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

7.      Plaintiff, Cookeville Regional Medical Center, is an acute care hospital and licensed Medicare provider located at 142 W. 5th Street, Cookeville, Tennessee, and has been assigned Medicare provider number 44-0059. Cookeville Regional Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

8.      Plaintiff, Erlanger Health System, is an acute care hospital and licensed Medicare provider located at 975 East Third Street, Chattanooga, Tennessee, and has been assigned Medicare provider number 44-0104. Erlanger Health System furnishes

inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

9.      Plaintiff, Fort Sanders Loudon Medical Center, is an acute care hospital and licensed Medicare provider located at 1125 Grove Street, Loudon, Tennessee, and has been assigned Medicare provider number 44-0110. Fort Sanders Loudon Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

10.      Plaintiff, Fort Sanders Parkwest Medical Center, is an acute care hospital and licensed Medicare provider located at 9352 Park West Boulevard, Knoxville, Tennessee, and has been assigned Medicare provider number 44-0173. Fort Sanders Parkwest Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

11.      Plaintiff, Fort Sanders Regional Medical Center, is an acute care hospital and licensed Medicare provider located at 1901 Clinch Avenue SW, Knoxville, Tennessee, and has been assigned Medicare provider number 44-0125. Fort Sanders Regional Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

12.      Plaintiff, Gateway Health System, is an acute care hospital and licensed Medicare provider located at 1771 Madison Street, Clarksville, Tennessee, and has been assigned Medicare provider number 44-0035. Gateway Health System furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

13.     Plaintiff, Henry County Medical Center, is an acute care hospital and licensed Medicare provider located at 301 Tyson Avenue, Paris, Tennessee, and has been assigned Medicare provider number 440132.  Henry County Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

14.     Plaintiff, Jackson-Madison County General Hospital, is an acute care hospital and licensed Medicare provider located at 708 West Forest Avenue, Jackson, Tennessee, and has been assigned Medicare provider number 44-0002.  Jackson-Madison County General Hospital furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

15.     Plaintiff, Johnson City Hospital Medical Center, is an acute care hospital and licensed Medicare provider located at 400 North State of Franklin Road, Johnson City, Tennessee, and has been assigned Medicare provider number 44-0063.  Johnson City Hospital Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

16.     Plaintiff, Laughlin Memorial Hospital, is an acute care hospital and licensed Medicare provider located at 1420 Tusculum Boulevard, Greeneville, Tennessee, and has been assigned Medicare provider number 44-0025.  Laughlin Memorial Hospital furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

17.     Plaintiff, Methodist Medical Center of Oak Ridge, is an acute care hospital and licensed Medicare provider located at 990 Oak Ridge Turnpike, Oak Ridge, Tennessee, and has been assigned Medicare provider number 44-0034.  Methodist

Medical Center of Oak Ridge furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

18.    Plaintiff, Middle Tennessee Medical Center, is an acute care hospital and licensed Medicare provider located at 400 N. Highland Avenue, Murfreesboro, Tennessee, and has been assigned Medicare provider number 44-0053.    Middle Tennessee Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

19.    Plaintiff, Morristown-Hamblem Healthcare System, is an acute care hospital and licensed Medicare provider located at 908 West Fourth North Street, Morristown, Tennessee, and has been assigned Medicare provider number 44-0030. Morristown-Hamblem furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

20.    Plaintiff, Regional Medical Center at Memphis, is an acute care hospital and licensed Medicare provider located at 877 Jefferson Avenue, Memphis, Tennessee, and has been assigned Medicare provider number 44-0152.  Regional Medical Center at Memphis furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

21.    Plaintiff, St. Mary's Health System, is an acute care hospital and licensed Medicare provider located at 900 E. Oak Hill Avenue, Knoxville, Tennessee, and has been assigned Medicare provider number 44-0120.  St. Mary's Health System furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

22.     Plaintiff, St. Thomas Hospital, is an acute care hospital and licensed Medicare provider located at 4220 Harding Road, Nashville, Tennessee, and has been assigned Medicare provider number 44-0082. St. Thomas Hospital furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

23.     Plaintiff, University of Tennessee Medical Center, is an acute care hospital and licensed Medicare provider located at 1924 Alcoa Highway, Knoxville, Tennessee, and has been assigned Medicare provider number 44-0015. University of Tennessee Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

24.     Plaintiff, Vanderbilt University Medical Center, is an acute care hospital and licensed Medicare provider located at 21st Avenue South & Garland Street, Nashville, Tennessee, and has been assigned Medicare provider number 44-0039. Vanderbilt University Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

25.     Plaintiff, Wellmont Bristol Regional Medical Center, is an acute care hospital and licensed Medicare provider located at 1 Medical Park Boulevard, Bristol, Tennessee, and has been assigned Medicare provider number 44-0012. Wellmont Bristol Regional Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

26.     Plaintiff, Wellmont Holston Valley Medical Center, is an acute care hospital and licensed Medicare provider located at 130 Ravine Road, Kingsport, Tennessee, and has been assigned Medicare provider number 44-0017. Wellmont

Holston Valley Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

27.    Plaintiff, Williamson Medical Center, is an acute care hospital and licensed Medicare provider located at 2021 Carothers Road, Franklin, Tennessee, and has been assigned Medicare provider number 44-0029. Williamson Medical Center furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program.

28.    The foregoing hospital plaintiffs are hereinafter referred to as "the Hospitals."

29.    Defendant, Michael O. Leavitt, is the Secretary ("the Secretary") of the United States Department of Health and Human Services ("HHS") with offices in Washington D.C. HHS is the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program.

## FACTS

### A.    Background Facts: Medicare Reimbursement In General

30.    Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a health insurance program that furnished health benefits to participating individuals once they reached the age of 65.

31.    Among the benefits provided under Medicare are hospital services. For cost reporting years beginning before October 1, 1983, the Medicare program reimbursed hospital services on a "reasonable cost" basis. 42 U.S.C. § 1395f(b).

32.    In 1983, Medicare began reimbursing hospitals using the prospective payments system ("PPS").  42 U.S.C. § 1395www(d).  Under PPS, hospitals are paid a fixed amount for each of approximately 490 diagnosis-related groups ("DRGs"), subject to certain payment adjustments.

33.    The Secretary (or one or more of his predecessors, hereinafter collectively referred to simply as "the Secretary") has delegated much of the responsibility for administering the Medicare Program to CMS (formerly known as the Health Care Financing Administration or "HCFA").

34.    The Secretary, through CMS, contracted out many of Medicare's audit and payment functions to entities known as fiscal intermediaries.

35.    In order for a hospital to obtain Medicare reimbursement, it must, at the close of each fiscal year, submit to its intermediary a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare.  42 C.F.R. §§ 413.20(b), 413.24(f).

36.    The intermediary then audits the cost report and informs the hospital of its final determination of the amount of Medicare reimbursement through a notice of program reimbursement ("NPR").  42 C.F.R. § 405.1803.

37.    A provider dissatisfied with its intermediary's determination may file an appeal with the Provider Reimbursement Review Board ("PRRB" or "Board") within 180 days of the date of the determination.  42 U.S.C. § 1395oo(a).

38.    Alternatively, a dissatisfied provider may request that the intermediary reopen and revise a settled cost report within three years of the date that the determination was issued.  42 C.F.R. § 405.1885(a).  Jurisdiction for reopening a decision

under 42 C.F.R. § 405.1885(a) rests exclusively with the administrative body that rendered the last determination or decision. 42 C.F.R. § 405.1885(c).

39.    The regulations adopted by the Secretary and in force at all relevant times described in this complaint also required that an intermediary's determination be reopened under 42 C.F.R. § 405.1885(b) if, within the three-year period in which reopenings are permitted, CMS notifies the intermediary that the initial determination or settlement was inconsistent with applicable law. The version of 42 C.F.R. § 405.1885(b) in effect at all relevant times referenced in this complaint stated that an intermediary's decision "shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services. . . " See 67 Fed. Reg. 50096 (August 1, 2002).[1]

**B.    DSH Adjustments**

40.    Hospitals that serve a disproportionate share of low-income patients, like the Hospitals in this matter, are eligible for upward adjustments to their Medicare PPS payments.

41.    The Secretary has delegated to CMS the authority to calculate and administer DSH adjustments as part of the PPS reimbursement system. CMS, in turn,

---

[1] All citations to 42 C.F.R. § 405.1885(b) in this complaint, unless otherwise noted, refer to the version of the regulation that was in effect prior to August 1, 2002 and which applies to the claims in this complaint. The Secretary promulgated an amended regulation because the Circuit Court of Appeals for the District of Columbia directed the Secretary to make additional DSH payments to the hospital plaintiffs in Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001). See 67 Fed. Reg. 50096.

delegates the responsibility to the fiscal intermediaries who notify hospitals of their DSH adjustments in their NPRs.

42.     The intermediaries calculate the DSH adjustment by adding two fractions known colloquially as the Medicare Proxy and the Medicaid Proxy.

43.     This case does not involve the Medicare proxy.

44.     The Medicaid proxy includes, among other things, the number of "patient days" for patients who were eligible for medical assistance under a State plan approved under Title XIX:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

45.     A larger number of patients in the numerator of the Medicaid proxy means a larger DSH adjustment for the Hospital.

## C.  Medicaid and Medicaid Waivers

46.     Congress enacted the Medicaid program as part of Title XIX of the Social Security Act in 1965.  Medicaid is a cooperative federal-state program that furnishes health care to persons who meet specified eligibility requirements, including low-income status.

47.     States participating in the Medicaid program have a substantial amount of discretion in selecting the benefits provided under their Medicaid programs.  42 U.S.C. § 1396d.  Nevertheless, all states must furnish certain minimum benefits under their

Medicaid program, including inpatient hospital services. 42 U.S.C. §§ 1396(a)(10)(A), 1396(a)(1).

48.    States also have some flexibility in establishing payment rates for hospital services under their Medicaid programs. 42 U.S.C. § 1396a(a)(13)(A).

49.    States that participate in the Medicaid program are required to develop a State Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C. § 1396. Generally, the State Plan (also referred to as a "Title XIX State Plan" or "Medicaid State Plan") must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. § 1396a.

50.    Some states, however, provide medical assistance through a demonstration project referred to as a "section 1115 waiver." 42 U.S.C. § 3115 (hereinafter "1115 waiver"). Under an 1115 waiver, the Secretary waives some of the requirements that a State Plan must meet as set forth in other sections of the Medicaid statute, such as freedom of choice, comparability, and statewide applicability. The purpose of the 1115 waiver is to encourage states to develop innovative and efficient methods of delivering Medicaid coverage through experimental projects.

51.    When Congress enacted the 1115 waiver provision in 1962, it proclaimed, by statutory fiat, that valid 1115 waiver programs were deemed approved under Title XIX. The statute provides:

> The costs of such project which would not otherwise be included as expenditures under section 3, 455, 1003, 1403, 1603, or 1903 as the case may be, and which are not included as part of the costs of projects under section 1110, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such title.

52.    In some cases, 1115 waivers cover patients who otherwise could have been made eligible for traditional Medicaid under the State Plan requirements set forth in 42 U.S.C. § 1396a.

53.    In other cases, the section 1115 waiver may provide for medical assistance to expanded eligibility populations of low income individuals who could not otherwise have been made eligible for traditional Medicaid under existing State Plan requirements. These are referred to by CMS as "expansion populations."

54.    CMS has acknowledged that one purpose of the 1115 waiver is to extend Title XIX matching payments to services furnished to populations that otherwise could not have been made eligible for traditional Medicaid.  CMS has acknowledged that the statute allows for expansion populations to be treated as traditional Medicaid beneficiaries.  65 Fed. Reg. 3136 (January 20, 2000).

55.    The State of Tennessee had a valid 1115 waiver in place during all of the relevant fiscal periods referenced in this Complaint that afforded medical assistance to the expansion populations described in the foregoing paragraph.  Tennessee called its waiver program "TennCare."

**D.    Section 1115 Waiver Days and the DSH Calculation**

56.    Patient days for which a patient was eligible for TennCare should have been included in the numerator of the Medicaid proxy by the Secretary and his intermediaries because TennCare was a section 1115 waiver program approved under Title XIX.

57.    Notwithstanding the fact that expansion populations, including TennCare patients, are comprised of patients eligible for medical assistance under a State Plan

approved under Title XIX, the Secretary interpreted the Medicare statute so as to exclude patient days of service for these patients from the Medicaid proxy of the DSH calculation. The Secretary issued numerous binding policy statements and memoranda prohibiting providers from claiming, and intermediaries from counting, expansion populations in the DSH calculation. For example, CMS issued a policy statement in 1999 that, among other things, prohibited the inclusion of expansion populations in the Medicaid proxy. Program Memorandum No. A 99-62 (December 1999).

58.    In computing the Hospitals' DSH adjustments for the fiscal years identified in the Complaint in the present matter, the respective Medicare intermediaries did not include patient days for expansion populations. The exclusion of these Title XIX days unlawfully reduced the Plaintiffs' DSH adjustments.

**E.    In 2000, the Secretary Changed His Treatment of Expansion Populations so as to Include them in the DSH calculation, Thereby Giving Notice that The Prior Policy was Inconsistent with the Medicare Statute.**

59.    On January 20, 2000, the Secretary corrected his treatment of expansion populations so as to require their inclusion in the DSH calculation. Specifically, the Secretary issued an Interim Final Rule on January 20, 2000 which reversed his long-standing exclusion of expansion populations and permitted inclusion of expansion populations in the Medicaid fraction for discharges on or after January 20, 2000. 65 Fed. Reg. 3136 (Jan. 20, 2000).

60.    The Interim Final Rule operated prospectively only. CMS promulgated a Final Rule on August 1, 2000 that was exactly the same:

> Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(I) of this section, hospitals may include all days

> attributable to populations eligible for Title XIX matching payments through a waiver approved under section 1115 of the Social Security Act.

42 C.F.R. § 412.106(b)(4)(ii); see 65 Fed. Reg. 47108 (August 1, 2000).

61.    The Interim Final Rule and the Final Rule served as notice under 42 C.F.R. § 1885(b) that prior determinations (which had excluded expansion populations) were inconsistent with applicable law, specifically the Medicaid Proxy of the DSH calculation.

62.    Pursuant to the reopening provision found in 42 C.F.R. § 405.1885(b), the Secretary, when he corrected his policy prospectively on January 20, 2000, should have directed the intermediaries serving Tennessee to reopen the Hospitals' final determinations for all cost report years that were the subject of NPR's received during the prior three years and to recalculate the DSH adjustment with the expansion populations included.

63.    On February 28, 1997, the intermediary issued Baptist Hospital an NPR and in December 2001 issued a revised NPR for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

64.    On September 23, 1997, the intermediary issued Baptist Hospital an NPR and on August 17, 2004 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

65.    On September 30, 1998, the intermediary issued Baptist Hospital an NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or

amended its determination so as to include expansion populations in the hospital's DSH calculation.

66.    On September 30, 1999, the intermediary issued Baptist Hospital an NPR and on March 7, 2003 issued a revised NPR for its cost report for fiscal year 1997.  The intermediary, however, never revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

67.    On December 6, 2001, the intermediary issued Baptist Hospital an NPR and on April 3, 2002 issued a revised NPR for its cost report for fiscal year 1998.  The intermediary, however, has not revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

68.    On December 6, 2001, the intermediary issued Baptist Hospital an NPR and on April 4, 2002 and April 3, 2005 issued revised NPRs for its cost report for fiscal year 1999.  The intermediary, however, has not revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

69.    On September 30, 2002, the intermediary issued Baptist Hospital an NPR and on March 26, 2004 issued a revised NPR for its cost report for fiscal year 2000.  The intermediary, however, has not revised or amended its determination so as to include expansion populations in the hospital's DSH calculation.

70.    On February 27, 1997, the intermediary issued Blount Memorial Hospital an NPR for its cost report for fiscal year 1994.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

71.    On September 23, 1997, the intermediary issued Blount Memorial Hospital an NPR for its cost report for fiscal year 1995.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

72.    On September 23, 1998, the intermediary issued Blount Memorial Hospital an NPR for its cost report for fiscal year 1996.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

73.    On May 28, 1999, the intermediary issued Blount Memorial Hospital an NPR for its cost report for fiscal year 1997.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

74.    On September 30, 1996, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 1994.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

75.    On September 29, 1997, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 1995.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

76.    On September 25, 1998, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 1996.  The intermediary,

however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

77.    On September 29, 2000, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

78.    On September 21, 2001, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

79.    On October 2, 2002, the intermediary issued Cookeville Regional Medical Center an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

80.    On February 28, 1997, the intermediary issued Erlanger Health System an NPR and on July 23, 1997 and April 22, 2002 issued revised NPRs for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

81.    On September 30, 1997, the intermediary issued Erlanger Health System an NPR and on October 29, 1999, November 16, 2000 and December 20, 2001 issued revised NPRs for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

82.     On September 30, 1998, the intermediary issued Erlanger Health System an NPR and on November 16, 2000 and December 20, 2001 issued revised NPRs for its cost report for fiscal year 1996.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

83.     On September 30, 1999, the intermediary issued Erlanger Health System an NPR for its cost report for fiscal year 1997.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

84.     On September 27, 2001, the intermediary issued Erlanger Health System an NPR and on June 6, 2003 issued a revised NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

85.     On September 27, 2001, the intermediary issued Erlanger Health System an NPR and on June 10, 2003 and August 17, 2004 issued a revised NPR for its cost report for fiscal year 1999.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

86.     On September 30, 2002, the intermediary issued Erlanger Health System an NPR and on July 9, 2003 and November 8, 2005 issued revised NPRs for its cost report for fiscal year 2000.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

87.     On September 30, 1997, the intermediary issued Fort Sanders Loudon Medical Center an NPR, and on December 2, 1998 issued a revised NPR for its cost

report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

88.    On August 24, 1998, the intermediary issued Fort Sanders Loudon Medical Center an NPR, and on January 14, 2000 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

89.    On September 30, 1999, the intermediary issued Fort Sanders Loudon Medical Center an NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

90.    On May 31, 2002, the intermediary issued Fort Sanders Loudon Medical Center an NPR for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

91.    On July 31, 2003, the intermediary issued Fort Sanders Loudon Medical Center an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

92.    On September 28, 1997, the intermediary issued Fort Sanders Parkwest Medical Center an NPR for its cost report for fiscal year 1994. The intermediary, however, has not revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

93.     On September 30, 1998, the intermediary issued Fort Sanders Parkwest Medical Center an NPR for its cost report for fiscal year 1995. The intermediary, however, has not revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

94.     On September 29, 1998, the intermediary issued Fort Sanders Parkwest Medical Center an NPR, and on May 12, 1999 issued a revised NPR for its cost report for fiscal year 1996. The intermediary, however, has not revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

95.     On September 30, 1997, the intermediary issued Fort Sanders Regional Medical Center an NPR, and on April 5, 1999 issued a revised NPR for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

96.     On September 23, 1998, the intermediary issued Fort Sanders Regional Medical Center an NPR, and on November 10, 2003 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

97.     On September 30, 2003, the intermediary issued Fort Sanders Regional Medical Center an NPR for its cost report for fiscal year 2000. The intermediary, however, has not revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

98.     On February 21, 1997, the intermediary issued Gateway Health System an NPR, and on June 12, 1997, August 19, 1998 and August 1, 2001 issued revised NPRs for its cost report for fiscal year 1994. The intermediary, however, never revised or

amended its determinations so as to include expansion populations in the hospital's DSH calculation.

99.    On September 30, 1997, the intermediary issued Gateway Health System an NPR, and on December 10, 1997 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

100.    On September 30, 1998, the intermediary issued Gateway Health System an NPR, and on April 14, 2000 issued a revised NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

101.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

102.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

103.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

104.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1997. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

105.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1998.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

106.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 1999  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

107.    The intermediary issued Henry County Medical Center an NPR for its cost report for fiscal year 2000.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

108.    On September 28, 2001, the intermediary issued Jackson-Madison County General Hospital an NPR for its cost report for fiscal year 1999.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

109.    The intermediary issued Johnson City Hospital Medical Center an NPR and on January 20, 2000 issued a revised NPR for its cost report for fiscal year 1994.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

110.    On September 30, 1997, the intermediary issued Johnson City Hospital Medical Center an NPR and on January 2, 2002 issued a revised NPR for its cost report for fiscal year 1995.   The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

111.    The intermediary issued Johnson City Hospital Medical Center an NPR and on October 23, 1997 issued a revised NPR for its cost report for fiscal year 1996.

The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

112.    On September 26, 2002, the intermediary issued Johnson City Hospital Medical Center an NPR and on June 9, 2003 issued a revised NPR for its cost report for fiscal year 2000.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

113.    On February 21, 1997, the intermediary issued Laughlin Memorial Hospital an NPR, and on August 9, 2000 issued a revised NPR for its cost report for fiscal year 1994.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

114.    On September 29, 1997, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 1995.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

115.    On September 14, 1998, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 1996.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

116.    On August 31, 1999, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 1997.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

117.    On September 29, 2000, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

118.    On September 26, 2001, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

119.    On May 23, 2002, the intermediary issued Laughlin Memorial Hospital an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

120.    On September 30, 1997, the intermediary issued Methodist Medical Center of Oak Ridge an NPR for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

121.    On September 9, 1998, the intermediary issued Methodist Medical Center of Oak Ridge an NPR, and on March 18, 2003 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

122.    On April 23, 1999, the intermediary issued Methodist Medical Center of Oak Ridge an NPR for its cost report for fiscal year 1996. The intermediary, however,

never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

123.    On September 26, 2003, the intermediary issued Methodist Medical Center of Oak Ridge an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

124.    On February 28, 1997, the intermediary issued Middle Tennessee an NPR and on July 3, 1997 and February 21, 2003 issued revised NPRs for cost report year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation. As a result, the intermediary under-reimbursed the plaintiff for that year by approximately $150,000.

125.    On September 9, 1998, the intermediary issued Middle Tennessee Medical Center an NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

126.    On September 14, 2000, the intermediary issued Middle Tennessee Medical Center an NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

127.    On September 29, 2001, the intermediary issued Morristown-Hamblem Healthcare System an NPR for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

128.    On September 26, 2002, the intermediary issued Morristown-Hamblem Healthcare System an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

129.    On September 25, 1997, the intermediary issued Regional Medical Center at Memphis an NPR and on April 22, 2003 and September 12, 2003 issued revised NPRs for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

130.    On September 29, 1998, the intermediary issued Regional Medical Center at Memphis an NPR and on May 26, 2004 issued revised NPRs for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

131.    On September 29, 1999, the intermediary issued Regional Medical Center at Memphis an NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

132.    On September 29, 2000, the intermediary issued Regional Medical Center at Memphis an NPR and on January 10, 2001, June 8, 2001, December 4, 2001, November 3, 2003 and June 2, 2004 issued revised NPRs for its cost report for fiscal year 1997. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

133.    On September 26, 2001, the intermediary issued Regional Medical Center at Memphis an NPR and on March 23, 2004 issued revised NPRs for its cost report for fiscal year 1998.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

134.    On November 8, 2001, the intermediary issued Regional Medical Center at Memphis an NPR and on June 4, 2004 issued a revised NPR for its cost report for fiscal year 1999.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

135.    On September 27, 2002, the intermediary issued Regional Medical Center at Memphis an NPR and on March 27, 2003 issued a revised NPR for its cost report for fiscal year 2000.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

136.    On April 30, 1999, the intermediary issued St. Mary's Health System an NPR, and on July 13, 2004 issued a revised NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

137.    On September 18, 2000, the intermediary issued St. Mary's Health System an NPR, and on October 18, 2001 and February 7, 2003 issued revised NPRs for its cost report for fiscal year 1997.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

138.    On March 28, 2001, the intermediary issued St. Mary's Health System an NPR, and on August 24, 2004 issued a revised NPR for its cost report for fiscal year

1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

139. On August 29, 2003, the intermediary issued St. Mary's Health System an NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

140. On September 13, 1996, the intermediary issued St. Thomas Hospital an NPR, and on January 3, 1997 and December 17, 1999 issued revised NPRs for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

141. On September 24, 1997, the intermediary issued St. Thomas Hospital an NPR, and on July 10, 2002 issued a revised NPR for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

142. On September 25, 1998, the intermediary issued St. Thomas Hospital an NPR, and on February 13, 2004 and June 16, 2004 issued revised NPRs for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

143. On September 27, 2000, the intermediary issued St. Thomas Hospital an NPR, and on March 26, 2003 issued a revised NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

144.    On September 30, 2002, the intermediary issued St. Thomas Hospital an NPR, and on June 3, 2003 issued a revised NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

145.    On August 11, 1997, the intermediary issued University of Tennessee Medical Center an NPR for its cost report for fiscal year 1994.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

146.    On August 11, 1997, the intermediary issued University of Tennessee Medical Center an NPR for its cost report for fiscal year 1995.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

147.    On September 30, 1998, the intermediary issued University of Tennessee Medical Center an NPR, and on October 31, 2000 and November 10, 1998 issued revised NPRs for its cost report for fiscal year 1996.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

148.    On September 30, 1999, the intermediary issued University of Tennessee Medical Center an NPR, and on November 16, 2000 and March 15, 2004 issued revised NPRs for its cost report for fiscal year 1997.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

149.    On September 30, 2000, the intermediary issued University of Tennessee Medical Center an NPR, and on December 13, 2004 issued a revised NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

150.    On February 28, 1997, the intermediary issued Vanderbilt University Medical Center an NPR, and on July 17, 1997, June 30, 1999, July 30, 1999 and March 17, 2000 issued revised NPRs for its cost report for fiscal year 1994. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

151.    On September 29, 1997, the intermediary issued Vanderbilt University Medical Center an NPR, and on June 30, 1999, June 22, 2000 and October 31, 2000 issued revised NPRs for its cost report for fiscal year 1995. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

152.    On September 17, 1998, the intermediary issued Vanderbilt University Medical Center an NPR, and on November 4, 1998, July 30, 1999, June 22, 2000, October 31, 2000, September 28, 2001 and October 8, 2004 issued revised NPRs for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

153.    On December 12, 2001, the intermediary issued Vanderbilt University Medical Center an NPR, and on January 7, 2002, January 23, 2004, October 8, 2004 and October 6, 2005 issued revised NPRs for its cost report for fiscal year 1998. The

intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

154.    On September 30, 2002, the intermediary issued Vanderbilt University Medical Center an NPR, and on October 17, 2002 and December 3, 2004 issued revised NPRs for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

155.    On September 30, 2002, the intermediary issued Vanderbilt University Medical Center an NPR, and on October 26, 2005 issued a revised NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

156.    On September 18, 1998, the intermediary issued Wellmont Bristol Regional Medical Center an NPR, and on September 17, 2002 issued a revised NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

157.    On September 30, 1999, the intermediary issued Wellmont Bristol Regional Medical Center an NPR, and on November 19, 2003 issued a revised NPR for its cost report for fiscal year 1997. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

158.    On September 29, 2000, the intermediary issued Wellmont Bristol Regional Medical Center an NPR, and on August 9, 2004 issued a revised NPR for its

cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

159.    On September 28, 2001, the intermediary issued Wellmont Bristol Regional Medical Center an NPR, and on March 20, 2003 issued a revised NPR for its cost report for fiscal year 1999. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

160.    On September 26, 2002, the intermediary issued Wellmont Bristol Regional Medical Center an NPR, and on March 20, 2003 issued a revised NPR for its cost report for fiscal year 2000. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

161.    On September 25, 1998, the intermediary issued Wellmont Holston Valley Medical Center an NPR, and on October 3, 2003 issued a revised NPR for its cost report for fiscal year 1996. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

162.    On September 30, 1999, the intermediary issued Wellmont Holston Valley Medical Center an NPR, and on June 5, 2002 issued a revised NPR for its cost report for fiscal year 1997. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

163.    On September 30, 2000, the intermediary issued Wellmont Holston Valley Medical Center an NPR. and on November 22, 2002 issued a revised NPR for its cost report for fiscal year 1998. The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

164.    On September 28, 2001, the intermediary issued Wellmont Holston Valley Medical Center an NPR, and on October 3, 2003 issued a revised NPR for its cost report for fiscal year 1999.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

165.    On September 30, 2002, the intermediary issued Wellmont Holston Valley Medical Center an NPR for its cost report for fiscal year 2000.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

166.    The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1994.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

167.    The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1995.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

168.    The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1996.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

169.    The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1997.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

170.    The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1998.    The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

171.   The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 1999.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

172.   The intermediary issued Williamson Medical Center an NPR for its cost report for fiscal year 2000.  The intermediary, however, never revised or amended its determinations so as to include expansion populations in the hospital's DSH calculation.

173.   Based on the Hospitals past experience, the amount of under-reimbursement for each cost report period was approximately $150,000.

## COUNT I
## MANDAMUS

174.   Paragraphs 1 through 173 are incorporated herein by reference as if fully set forth at length below.

175.   CMS, by issuing the Interim Final Rule, announced a finding that the Secretary's earlier interpretation—that expansion populations should be excluded from the Medicaid Proxy of the DSH calculation—was inconsistent with the actual text and intent of the Medicare statute requiring that all days for which patients were eligible for medical assistance under a State Plan approved under Title XIX should be included in the DSH calculation.  See 65 Fed. Reg. 3136 (Jan. 20, 2000).

176.   As a matter of law, the Interim Final Rule's requirement that expansion populations be included in the DSH calculation was binding on the Secretary as well as all Medicare intermediaries.

177.   According to the version of the reopening regulation (42 C.F.R. § 405.1885(b)) that was in effect at the time: "A determination or a hearing decision

rendered by the intermediary shall be reopened and revised by the intermediary if, within the aforementioned 3-year period, the Centers for Medicare & Medicaid Services notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by the Centers for Medicare & Medicaid Services . . . ." Id.

178.    As a result of the Interim Final Rule, the intermediary, pursuant to 42 C.F.R. § 405.1885(b), had an affirmative, non-discretionary duty: (i) to reopen and revise the Hospitals' cost reports for all cost report periods that were the subject of NPR's (or revised NPR's) that did not include expansion populations in the Medicaid Proxy of the DSH calculation, irrespective of whether the Hospitals requested reopening, (ii) to include those patient days in the Medicaid proxy of the Hospitals' DSH calculation that are required to be included by the Medicare statute, including but not limited to expansion populations, (iii) to issue payment reflecting the increased DSH adjustment for each of the affected years, (iv) to grant all reopening requests, irrespective of whether those reopening requests specifically sought reimbursement for expansion populations, so that the intermediary could include expansion populations in plaintiff's DSH calculation and thereafter issue payment for plaintiff's increased DSH adjustment for those cost report periods. See 42 C.F.R. § 405.1885(b).

179.    For those Hospitals that fell below the threshold for obtaining DSH, but would meet the threshold with the inclusion of expansion populations or other Medicaid patient days, the intermediary had a duty to reopen the Hospitals' cost reports, include all patient days as required by the Medicare statute, and make payment to the Hospitals according to the Medicare statute's DSH provisions.

180.    As the courts have consistently agreed, the Medicare statute requires that all Medicaid patient days, including Medicaid expansion populations, be included in the Medicaid Proxy of the DSH calculation. The Secretary should be compelled to reopen all the cost report periods referenced in this complaint pursuant to 42 C.F.R. § 405.1885(b).

WHEREFORE, the Hospitals request that the Court enter an Order and issue a writ of mandamus:

(i)    Directing the Secretary and/or his intermediaries, within 30 days, to reopen the Hospitals' cost reports pursuant to 42 C.F.R. § 405.1885(b) for all of the time periods referenced in the Hospitals' complaint;

(ii)    Directing the Secretary and/or his intermediaries to recalculate the DSH calculation using the expansion populations and the patient days required by the Medicare statute;

(iii)    Directing the Secretary and/or his intermediaries to pay the Hospitals, within 90 days,

(iv)    Directing the Secretary to pay the additional amounts determined through the reopening process, together with an award of both pre-judgment and post-judgment interest on the additional amounts determined throughout the reopening process;

(v)    Stating that this Court retains jurisdiction in this matter until the Secretary and/or his intermediaries have completed the reopening process, up to and including issuing revised NPR's and payment where applicable;

(vi)    Requiring the Secretary to submit for the Court's prior approval any further instructions provided to the intermediaries with regard to implementing this Court's ruling;

(vii)    Awarding the Hospitals attorney's fees and costs, as permitted by law; and

(viii)    Awarding such other monetary and equitable relief as this Court deems just and appropriate or may be necessary to effectuate any aspect of the Court's award.

Respectfully submitted,

*Jacqueline E. Bennett*

Murray J. Klein
DC Bar #492415
Jacqueline E. Bennett
DC Bar #474355
**REED SMITH LLP**
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, DC  20005
(202) 414-9200
(202) 414-9299 facsimile
JBennett@ReedSmith.com

Dated:  January 13, 2006